## APPEAL OF CONSTANTINE J. TSIVOGLOU.

Docket No. 3634. Submitted July 2, 1925. Decided February 15, 1926.

> Valuation of good will asserted by the Commissioner overcome by the evidence.

*George W. Mathews, Esq.*, for the taxpayer.
*A. H. Fast, Esq.*, for the Commissioner.

Before LITTLETON, SMITH, and TRUSSELL.

This appeal involves deficiencies in income and profits taxes for the years 1919 and 1920 of $93,754.84 and $628.56, respectively. The deficiencies result from a computation by the Commissioner showing taxable gain derived by the taxpayer from a reorganization, by incorporation, of his business.

### FINDINGS OF FACT.

The taxpayer is an individual residing in the State of New Hampshire. His place of business is 131 State Street, Boston, Mass.

In 1911 he started in business on a small scale as a dealer in confectioners' supplies in Boston. The business grew steadily, and in 1919 he was operating on a rather large scale. On December 15, 1919, C. J. Tsivoglou, Inc., was organized under the laws of Massachusetts, with capital stock of a par value of $149,700, and on December 27, 1919, the taxpayer transferred his going business to that corporation for the entire issue of stock, the par value of the stock being equal to the book value of the assets, less outstanding liabilities. The difference between the book value and market value of the assets, as of the date of exchange, appears as follows:

| | Book value. | Market value, Dec. 27, 1919. | Difference. |
|---|---|---|---|
| **ASSETS.** | | | |
| Cash | $70,986.61 | $70,986.61 | |
| Accounts receivable | 94,762.54 | 94,762.54 | |
| Merchandise on hand | 50,497.84 | 52,039.36 | $1,541.92 |
| Merchandise in transit | 699,453.73 | 698,437.85 | 1,015.88 |
| Foreign exchange | 1,197,123.21 | 1,035,107.66 | 162,015.55 |
| Claims, freight | 4,007.78 | 0.00 | 4,007.78 |
| Furniture and fixtures | 2,000.00 | 2,000.00 | |
| Prepaid items | 462.00 | 462.80 | |
| | 2,119,294.51 | 1,953,796.82 | 165,497.69 |
| **LIABILITIES.** | | | |
| Accounts payable | 1,270,140.78 | | |
| Letters of credit payable | 699,453.73 | | |
| | 1,969,594.51 | | |
| Book value of net worth | 149,700.00 | | |

The item of foreign exchange, listed among the assets of the taxpayer at $1,197,123.21, represents English pounds sterling and French francs purchased during the year 1919, in the course of business, for use in purchasing supplies abroad, and the market value of assets indicates a deficit of $15,797.69.

The Commissioner has determined the net income of the taxpayer for 1919 to be $287,303.20. The difference between this amount and the amount previously reported results from the inclusion by the Commissioner in the assets of the taxpayer at the time they were exchanged for stock of an item of good will, upon which he has placed a value of $306,782. This valuation was arrived at by averaging the capital invested and the net earnings for the years 1916 to 1919, inclusive; ascribing 8 per cent as a proper return for the capital, and capitalizing the remaining portion of net earnings at the rate of 15 per cent. On this basis the Commissioner found that the taxpayer realized a profit out of the reorganization in the amount of $141,284.31.

C. J. Tsivoglou, Inc., continued in business until March 25, 1921, when it was adjudged a bankrupt by the United States District Court for the District of Massachusetts. Subsequently, on the 6th day of July, 1922, James M. Olmstead, receiver in bankruptcy, declared a final and only dividend of one-fifth of 1 per cent on the debts claimed and proved in the bankruptcy case.

#### DECISION.

The deficiency should be computed in accordance with the following opinion. Final determination will be settled on 15 days' notice, in accordance with Rule 50.

#### OPINION.

TRUSSELL: Under section 202 (b) of the Revenue Act of 1918, when property is exchanged for other property the gain or loss resulting, if any, is to be measured by the difference between the cost of the property transferred and the fair market value of the property received in exchange therefor. This taxpayer exchanged his mercantile inventory and business for stock in a corporation organized by him. The record is entirely silent as to whether the stock so received in exchange had any fair market value, or any value whatever, and, so far as can be inferred from the circumstances of this business and its reorganization, we are satisfied that the stock could not have had any market value.

While the taxpayer's business, during the years 1918 and 1919, had produced comparatively large profits, an examination of the state-

ment of resources and liabilities of that business, set forth in the findings of fact, shows that, measured by the excess of liabilities over the true value of assets, it was insolvent on the day the corporation was organized.

In view of the record so made, we are forced to the conclusion that the stock of the corporation received by the taxpayer in exchange for his business had no fair market value, and that no gain can be predicated upon the exchange.